IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL LASURE,

        Plaintiff,

v.                 //   CIVIL ACTION NO. 1:14CV127
                           (Judge Keeley)

SAM'S EAST, INC.,

        Defendant.


MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE

Pending before the Court is the motion for summary judgment filed by the defendant, Sam's East, Inc. ("Sam's Club") (Dkt. No. 48).[1] For the reasons that follow, the Court **GRANTS** Sam's Club's motion and **DISMISSES** the case **WITH PREJUDICE**.

## BACKGROUND

This case concerns the employment and termination of plaintiff Carol Lasure ("Lasure"), who worked as a club manager for Sam's Club. The questions presented on summary judgment include:

1) Whether Lasure would have been fired were it not for her protected status as a person over the age of 40;

2) Whether Sam's Club had a legitimate, non-discriminatory reason for Lasure's termination; and,

---

[1] Lasure originally named Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc., as defendants. She substituted Sam's Club as the proper defendant on October 31, 2014 (Dkt. No. 20), and dismissed the Wal-Mart defendants on August 17, 2015 (Dkt. No. 46).

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

3)   Whether Lasure can establish that Sam's Club's
legitimate, non-discriminatory reason for terminating her
was mere pretext.

## I.   Factual Background

As it must, the Court reviews all evidence "in the light most
favorable" to Lasure, the non-moving party. <u>Walker v. Mod-U-Kraf
Homes, LLC</u>, 775 F.3d 202, 207 (4th Cir. 2014).

### A.   The 2011 Reorganization

Lasure began working for Sam's Club in 1991, and advanced
through the ranks until she was promoted to the position of club
manager at the Morgantown, West Virginia, store (Dkt. No. 48-1 at
2).  Lasure was supervised by Market Manager Michael Miller ("Mike
Miller") until March, 2011, when Sam's Club reorganized (Dkt. No.
48-3 at 2).  At that time, Market Manager Charles Miller ("Chuck
Miller"), the brother of Mike Miller, acquired the West Virginia
market, including Lasure's store.  <u>Id.</u> at 3.  Regional Manager
Jeffrey Lencke ("Lencke") oversaw Lasure's club after the
reorganization (Dkt. No. 48-8 at 3).

Mike Miller usually gave Lasure solid performance ratings,
although he indicated in her fiscal year 2011 mid-year evaluation
that she should improve her associate engagement skills and

## MEMORANDUM OPINION AND ORDER GRANTING THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
## AND DISMISSING THE CASE WITH PREJUDICE

increase sales of "Plus" memberships (Dkt. No. 48-2 at 2).[2]  In March, 2011, Chuck Miller gave Lasure a performance review completed by Mike Miller, who had overseen Lasure for much of that fiscal year (Dkt. No. 48-1 at 12).  While Mike Miller generally rated Lasure as a solid performer, he noted that she needed to develop associate engagement, maintain consistent standards around the holidays, maintain consistent fresh execution, develop the Plus membership program, and improve associate turnover (Dkt. No. 48-4).

During the evaluation meeting, Chuck Miller did not discuss the review completed by his brother (Dkt. No. 48-1 at 14). Instead, he told Lasure that she didn't know how to treat or talk to people, and that it was "her way or the high way." Id. Lasure left "completely humiliated," feeling like she was "no good at anything." Id. During a follow-up telephone call in June or July, 2011, Chuck Miller told Lasure that he "would imagine, at your age and with the tenure with the company that you have, that you can take care of yourself should something happen; that you are financially set." Id. at 16.  From that point on, Lasure believed that she was "doomed." Id.

---

[2] A "Plus" membership is the highest tier membership available, affording members the most benefits (Dkt. No. 48-1 at 9).

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

## B.    The Mid-Atlantic Region Meeting

In the Spring, 2011, Lencke held a meeting for management associates from the Mid-Atlantic Region, which included Lasure's club, in Virginia Beach, Virginia ("the MAR Meeting")(Dkt. No. 48-5).    Market Managers Chuck Miller, Mike Miller, and Janice Trelewicz ("Trelewicz") attended, as did Market Asset Protection Manager David Martin ("Martin"), and Regional Human Resources Manager Denise Gilreath ("Gilreath").    Id.    Club managers, including Lasure, did not attend the MAR Meeting.

During that meeting, Lencke led a discussion on succession planning and club managers' performance (Dkt. No. 48-3 at 6). Sam's Club commonly employs a nine-quadrant grid during such exercises, with each club manager ranked on the vertical axis for performance (exceeds expectations, meets expectations, and below expectations/in the job for less than 6 months) (Dkt. No. 48-6). On the horizontal axis, club managers are ranked for growth potential (high, solid, or low). Id. Lasure's name was included in quadrant 8 of the grid, which indicates the intersection of performance that "meets expectations" and "low" growth potential. Id. Chuck Miller, Mike Miller, Lencke, Gilreath, and Trelewicz testified that Lencke did not specifically identify managers,

4

## MEMORANDUM OPINION AND ORDER GRANTING THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
## AND DISMISSING THE CASE WITH PREJUDICE

including Lasure, for termination during the MAR Meeting (Dkt. No. 48-3 at 7; Dkt. No. 48-7 at 3; Dkt. No. 48-8 at 4; Dkt. No. 48-9 at 2; Dkt. No. 52 at 4). Martin recalled differently.

On July 9, 2011, Martin called Lasure's personal cell phone, describing Lencke's succession planning exercise during the MAR Meeting (Dkt. No. 64-12 at 2, 3). Martin informed Lasure that Lencke had singled her out as one of three store managers he wanted to fire; Martin told her that he would send her an "anonymous" letter that she could use in a court of law. Id. In late July, Lasure received an unsigned letter that matched the description of the letter Martin had offered to send, with disguised handwriting and misspelled words. Id. The text of the letter reads as follows:

> Concerned for you
> In March of 2011 in Virginia Beach [sic] Virginia a
> meeting was held for the MAR Team, Market Teams from
> 49,33 plus Jeff Hale, hosted by Jeff Lenke [sic]. During
> the course of the meeting both Carol Lasure and Brenda
> Ferrell were singled out as club managers that needed to
> go.[3] This was done in an open forum. Jeff Lenke [sic]
> then stated to everyone in attendance that this was not
> to be discussed outside of this meeting, he repeated it

---

[3] Club Manager Brenda Ferrell later voluntarily resigned from her position as club manager (Dkt. No. 64-3 at 16). Sam's Club believed that Ferrell resigned to live closer to her ailing mother in Tennessee. Id.

MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE

several time [sic].  Anyone under oath would have to
swear that this took place.

(Dkt. No. 60-3).  The envelope of the letter, which was postmarked

in Charleston, West Virginia, misspelled Lasure's last name (Dkt.

No. 60-4).   Martin, who suffers from seizures that limit his

memory, has no recollection of Lencke's statements, of speaking

with Lasure on the telephone, or of sending her any letter (Dkt.

No. 60-1 at 5-7, 14-16).[4]  Importantly, Lasure admits that Martin

never told her that Lencke targeted her or any other manager based

on age (Dkt. No. 48-1 at 26; Dkt. No. 61-5 at 37).

### C.   Lasure's PIP and Coachings

On June 3, 2011, Chuck Miller placed Lasure on a performance

improvement plan ("PIP"), which is a tool Sam's Club uses to

provide associates with a formal opportunity to understand specific

improvements expected of them (Dkt. No. 48-10).   PIPs, which

include follow-up dates to track improvement, are not disciplinary

events at Sam's Club.  Id.  Lasure's PIP reflects that she was not

---

[4] The parties dispute whether Lasure's account of Martin's
telephone call and letter is admissible under the Federal Rules of
Evidence; this dispute is irrelevant to the outcome of the case,
however.   Even when the Court considers Martin's statement and
letter, Lasure has failed to produce sufficient evidence to
convince a reasonable juror that Sam's Club terminated her due to
her age.

MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE

meeting Chuck Miller's expectations in the following areas: (1) respect for the individual; (2) standards and service guide; and (3) developing talent. Id. During Chuck Miller's first follow-up, he noted that development was still needed, but that he expected Lasure to be up to speed by his second follow-up (Dkt. No. 48-11).

On multiple occasions throughout the summer of 2011, Chuck Miller and Trelewicz, a fellow market manager who was filling in for Chuck Miller while he was on medical leave, evaluated Lasure's club through routine walk-throughs (Dkt. No. 48-7 at 4). The manager conducting the walk-through gives the club an overall rating of green, yellow, or red, with red being the lowest possible rating. Id. On August 5, August 16, and August 23, 2011, Trelewicz rated Lasure's club as "red"; these visits resulted in a written coaching on September 22, 2011, for falling below company standards (Dkt. No. 48-12). On November 10, 2011, Chuck Miller issued a second written coaching to Lasure for "issues causing inconsistency with club standards," including staffing, bakery, and Plus performance (Dkt. No. 48-13).

Shortly after Lasure's second coaching, she worked a 9 A.M. to 7 P.M. shift instead of an opening shift on Black Friday (Dkt. No. 48-14). According to Sam's Club's 2011 "Day After Thanksgiving

7

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

Event" guide, the Club Manager was to work a shift beginning at 3:00 A.M. (Dkt. No. 48-20 at 4).  Lasure's failure to work the opening shift resulted in Shannon Athey ("Athey"), Market Human Resources Manager, giving Lasure her third written coaching (referred to as a "Decision-Making Day" at the time) (Dkt. No. 48-14).  Under Sam's Club policy, another coaching over the following year would result in Lasure's termination.  Id.; see also Dkt. No. 48-18.  On January 27, 2012, after Lasure's Decision-Making Day coaching, Gilreath estimated in a succession planning e-mail that Lasure's position would be vacant in the second quarter of 2012 (Dkt. No. 64-6 at 2).

**D.  Lasure's Complaints**

In Summer, 2011, Lasure utilized Sam's Club's open door policy to complain about Chuck Miller.  The open door policy means that employees can "talk with anyone in the company, including the president, without fear of retaliation" (Dkt. No. 48-1 at 3).  Lasure called and then e-mailed Gilreath, complaining that Chuck Miller was "personally attacking" her and her management team, among other issues (Dkt. No. 48-15).  Lasure also informed Gilreath that Chuck Miller gave an associate in Lasure's store his personal e-mail address and cell phone number, and assured the associate

that Lasure would be gone within two weeks (Dkt. No. 63-2 at 41-42). Gilreath never investigated this allegation (Dkt. No. 64-2 at 98-99).

On August 30, 2011, Lasure e-mailed Human Resources Manager Andrea Walker, Trelewicz, Lencke, and Lance de la Rosa ("de la Rosa"), Lencke's boss, complaining that the market team in her district "has never helped as needed" (Dkt. No. 63-5 at 1). Trelewicz asked Lasure to call her to discuss the issue, admonishing Lasure for engaging in that type of conversation through e-mail. Id. Although Trelewicz believed Lasure was using the open door policy, she did not pursue Lasure's concerns with an investigation (Dkt. No. 63-8 at 18-22; Dkt. No. 63-2 at 39).

Lasure also utilized the open door policy to call Matt Walters ("Walters"), a Human Resources Manager in the Pittsburgh market (Dkt. No. 48-18 at 19). Although Walters did not oversee Lasure's store, Lasure "respected him very much" and knew he would give her an "honest answer." Id. Walters informed Lasure that Chuck Miller could be difficult to work with, and was very different from his brother. Id. at 20. Although Lasure attempted to figure out why Chuck Miller was treating her disrespectfully, she never told Walters that she believed the treatment was based on her age. Id.

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

On the day of Lasure's Decision-Day coaching, she again utilized the open door policy by calling the home office (Dkt. No. 48-1 at 29). She "asked to speak to whoever was in charge of human resources for the company at that time," and spoke to an assistant, Bill, whose last name is unknown. <u>Id.</u> at 29. Bill informed Lasure that Sam's Club consistently coached associates who failed to work the proper shift on Black Friday. <u>Id.</u> Although Lasure told Bill that she felt that she was being targeted, she never mentioned any age-related animus. <u>Id.</u> at 30; Dkt. No. 72-1 at 8-9.

**E.    The Open Door Investigation**

In Summer, 2012, Chuck Miller and Athey began investigating Lasure after several associates complained that Lasure had retaliated against them for using the open door policy (Dkt. No. 52 at 3; Dkt. No. 70-1 at 2; Dkt. No. 64-2 at 35). At one point, Gilreath took over Chuck Miller's investigation (Dkt. No. 52 at 3).

Lasure called Gilreath to complain about Chuck Miller, following which Gilreath visited Lasure's store (Dkt. No. 48-1 at 4). Although Lasure initially believed that Gilreath was visiting to investigate her open door complaint, Gilreath was actually visiting to investigate several open door complaints made by the associates regarding Lasure. <u>Id.</u> at 4, 28; Dkt. No. 64-12 at 23.

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

During Gilreath's investigation, she obtained many employee statements. Associates claimed that Lasure had threatened their jobs if they failed to increase sales of Plus memberships, had stated that she would threaten their jobs when hers was threatened, and had warned them not to throw her under the bus (Dkt. No. 48-16). Some associates felt that Lasure abused her power, and retaliated against them for using the open door policy to complain about her. Id. On the other hand, associate Amanda Bright reported that the market team was "out to get" Lasure, and that "nothing is ever good enough" for the market team (Dkt. No. 64-2 at 94; Dkt. No. 64-10 at 1). Longtime associate Albert Hill backed Lasure "100%," and associate Linda Robinson told Gilreath that Lasure was the best manager she had ever had in her career at Sam's Club (Dkt. No. 64-7 at 1-3).

In her investigation report, Gilreath found that the following allegations were substantiated: (1) that Lasure treated associates who used the open door policy differently; (2) that Lasure intimidated associates; (3) that Lasure placed undue pressure on associates by sharing her coaching situation; and, (4) that Lasure was unfair and inconsistent with policy administration (Dkt. No.

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

48-17).  Gilreath recommended Lasure's termination because she had already received three coachings.[5]  Id. at 8.

### F.  Lasure's Termination

It is undisputed that Lasure was an at-will employee of Sam's Club (Dkt. No. 48-1 at 2).  Although the record is unclear as to who actually ordered Lasure's termination, she contends that Lencke, age 39, and Trelewicz, age 36, were responsible (Dkt. No. 70 at 6-7; Dkt. No. 65-9 at 1).  Lasure was 57 years old at the time of her termination.

Lencke testified that regional managers like himself did not make decisions about firing club managers; rather, district managers like Chuck Miller run their district (Dkt. No. 63-2 at 12).[6]  Lencke, however, did approve Chuck Miller's request to move forward with written coaching of Lasure on November 1, 2011 (Dkt.

---

[5] Pursuant to Sam's Club policy, any associate who already received three coachings within the last year whose job performance "warrants a level of coaching" "will be subject to termination." (Dkt. No. 48-18 at 1).

[6] Lencke was later asked to resign following improper behavior during an investigation (Dkt. No. 65-8 at 6).  Lasure attempts to argue that she was treated differently than Lencke, who was younger than her, because he was given the opportunity to resign rather than face termination (Dkt. No. 70 at 44).  Lencke, however, was two job grades above Lasure, and fired by different decision makers, making him an improper comparator to Lasure (Dkt. No. 64-3).  Monk v. Potter, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010).

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

No. 63-19).  During Lencke's deposition, the following exchange

occurred regarding his authority to fire Lasure:

> Q: Did you decide to terminate Carol Lasure?
> A: No.
> Q: Who decided to terminate Carol Lasure?
> A: To be honest with you, I can't even tell you who
> exactly because I was informed just a couple days before
> it was going to happen by Denise Gilreath that the
> investigation had concluded and that there was
> overwhelming evidence . . . .

(Dkt. No. 63-2 at 15).  Lencke recalled that Lasure's termination

"had to be approved by Lance [de la Rosa] and by Todd Harbaugh"

(Dkt. No. 63-2 at 16).[7]  Lencke concluded that Lasure should be

fired only after he saw Gilreath's investigation report (Dkt. No.

63-2 at 18).  Gilreath testified that she had recommended Lasure's

termination, but that Chuck Miller had made the ultimate decision

(Dkt. No. 65-2 at 39, 40).

Contrary to Gilreath and Lencke's testimony, Chuck Miller

testified that Lasure's termination "wasn't up to [him] to approve"

(Dkt. No. 63-16 at 45).  According to Chuck Miller, a group of

people, including Lencke, made the decision to fire Lasure.  Id.

---

[7] De la Rosa was 47 at the time of Lasure's termination (Dkt.
No. 65-9 at 1).  Sam's Club contends that de la Rosa had no
involvement in the decision to discharge Lasure (Dkt. No. 65-5 at
3).

## MEMORANDUM OPINION AND ORDER GRANTING THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
## AND DISMISSING THE CASE WITH PREJUDICE

On July 6, 2012, Chuck Miller informed Lasure of her termination and performed an exit interview (Dkt. No. 64-16 at 24, 49-50). Lasure was replaced by Misty Ulderich, who was 35 years old at the time (Dkt. No. 64-12 at 24; Dkt. No. 65-7 at 1; Dkt. No. 65-9).

Before Lasure's termination she began seeing a counselor and a psychiatrist to deal with work-related stress (Dkt. No. 61-5 at 25-26). In August, 2012, after her termination, Lasure began experiencing chest pain and went to the hospital, fearing that she was having a heart attack. Id. at 27. In September, 2012, Lasure advised psychologist Tina Yost that she felt like she had been targeted because she was nearing retirement age (Dkt. No. 61-6 at 1).

## II. Procedural Background

Lasure filed suit in the Circuit Court of Monongalia County, West Virginia, on July 1, 2013 (Dkt. No. 1 at 1). Her complaint included claims for disability discrimination, age discrimination, and retaliation arising under the West Virginia Human Rights Act of 1967, W. Va. Code § 5-11-1 *et seq.* (West 2012). On August 17, 2015, Lasure voluntarily dismissed Count One, her disability discrimination claim (Dkt. No. 46 at 1). On September 11, 2015, in

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

her response to Sam's Club's motion for summary judgment, Lasure agreed to dismiss Count Three, her retaliation claim (Dkt. No. 70 at 5).  The Court therefore **DISMISSES** Count Three of Lasure's complaint (Dkt. No. 1-1 at 19).

On August 17, 2015, Sam's Club filed a motion for summary judgment, arguing that Lasure failed to present any evidence of a nexus between her termination and her age (Dkt. No. 49).  Lasure opposed the motion on September 11, 2015, contending that her termination was the culmination of a long-standing scheme to fire her fueled by age-related animus (Dkt. No. 70).  Sam's Club replied on September 23, 2015, reiterating that Lasure (1) cannot establish a prima facie case of age discrimination, and (2) cannot demonstrate the Sam's Club's reasons to terminate her were pretextual (Dkt. No. 72).  The motion is now fully briefed and ripe for disposition.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

---

a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the non-moving party. <u>Walker</u>, 775 F.3d at 207. The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

## <u>APPLICABLE LAW</u>

The West Virginia Human Rights Act of 1967 ("the WVHRA"), prohibits employers from discriminating against any individual with

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

respect to "compensation, hire, tenure, terms, conditions or privileges of employment." W. Va. Code § 5-11-9(c) (West 2012). Discrimination "means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age. . . ," which is defined as "the age of forty or above." W. Va. Code §§ 5-11-3(h), (k) (West 2012). Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). <u>See</u> <u>Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n</u>, 309 S.E.2d 342, 352 (W. Va. 1983) (reaffirming use of the <u>McDonnell Douglas</u> standard in West Virginia).

A plaintiff must establish the following to set forth a <u>prima facie</u> case of impermissible employment discrimination: (1) she is a member of a protected class; (2) the employer made an adverse employment decision affecting her; and (3) but for her protected status, the employer would not have made the adverse decision. Syl. pt. 3, <u>Conaway v. E. Associated Coal Corp.</u>, 358 S.E.2d 423, 429 (W. Va. 1986). In establishing the third element of the <u>prima facie</u> case, the plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's

## MEMORANDUM OPINION AND ORDER GRANTING THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
## AND DISMISSING THE CASE WITH PREJUDICE

status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Id. at 429-30. The plaintiff can establish this link by any of the following methods: (1) an admission from the employer; (2) unequal or disparate treatment between members of the protected class and others; (3) the elimination of legitimate reasons for the decision; and, (4) statistics showing that members of the protected class receive substantially worse treatment than others. Id. at 430.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to advance a non-discriminatory reason for the plaintiff's dismissal. Id. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." Id.

After the employer explains its decision, the employee may rebut the employer's legitimate, non-discriminatory reason. Id. The burden then shifts back to the plaintiff to prove that the facially legitimate reason given by the employer for the employment decision was merely a pretext for a discriminatory motive. Eddy v. Biddle, No. 1:11CV137, 2013 WL 66929, at *6 (N.D.W. Va. Jan. 4,

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

2013) (quoting <u>Ford Motor Credit Co. v. W. Va. Human Rights Comm'n</u>,

696 S.E.2d 282, 293 (W. Va. 2010)) (internal quotation marks

omitted).  At that point, "the issue of whether the plaintiff [has]

established a *prima facie* case . . . [becomes] irrelevant." <u>Skaggs</u>

<u>v. Elk Run Coal Co., Inc.</u>, 479 S.E.2d 561, 583 (W. Va. 1996).  "To

get to the jury, the employee must offer sufficient evidence that

the employer's explanation was pretextual to create an issue of

fact." <u>Id.</u>

<u>**ANALYSIS**</u>

The first step in the Court's analysis is to determine whether

Lasure has sufficient <u>prima facie</u> evidence of age discrimination to

survive summary judgment.  Lasure contends that she can satisfy

this requirement because a substantially younger decision maker

decided to fire her, and she was replaced by someone outside the

protected class (Dkt. No. 70 at 6).  Under <u>Barefoot v. Sundale</u>

<u>Nursing Home</u>, 457 S.E.2d 152, 162 (W. Va. 1995), a plaintiff

alleging discriminatory discharge can satisfy the <u>prima</u> <u>facie</u>

requirement by establishing the following:  (1) that she is a

member of a protected class; (2) that she provided "competent,

capable, and loyal service" to her employer; (3) that she was

discharged; and, (4) that she was replaced by someone outside the

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

protected class.  457 S.E.2d at 162.  Conaway, which established a

"general test inclusive of the analyses" in older employment

discrimination cases, does not preclude a plaintiff from offering

the prima facie case explained in Barefoot.  See id.

    Using the Barefoot standard, Lasure has established a prima

facie case.  She was 57 years old at the time of her termination,

and is, accordingly, a member of the protected class.  W. Va. Code

§ 5-11-3(k).  Taking Lasure's version of the facts as true, she was

a longstanding, loyal, competent employee.  Sam's Club made an

adverse employment decision when it terminated her as Club Manager

and replaced her with Misty Ulderich, who was 35 years old at the

time.  One of the decision makers, Lencke, was outside the

protected class at age 37.  Other decision makers Trelewicz and

Chuck Miller were 36 and 49, respectively.

    The burden shifts to Sam's Club to establish a legitimate,

non-discriminatory reason for dismissing Lasure.  Conaway, 358

S.E.2d at 430.  Sam's Club argues that it discharged Lasure

according to its uniform policy after four written disciplinary

events within one year and a thorough investigation into employee

allegations of misconduct (Dkt. No. 72 at 10).  Lasure received

written coachings on September 22, 2011, November 10, 2011, and

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

December 4, 2011.  After Gilreath's investigation substantiated allegations of misconduct and intimidation, Lasure was terminated on July 6, 2012.  Gilreath interviewed upwards of twenty associates over a three-week period, and gave Lasure an opportunity to respond before issuing her findings.  Although Lasure believes Gilreath should have interviewed other associates, Gilreath testified that she gave anyone who wanted to talk the opportunity to come forward.  The Court therefore concludes that Sam's Club has offered a legitimate, non-discriminatory reason for terminating Lasure. Conaway, 358 S.E.2d at 430.

Finally, Lasure bears the burden of establishing that Sam's Club's reason for terminating her was pretextual.  Id.  Lasure argues that Lencke hatched a scheme to get rid of her and two other older managers at the MAR meeting (Dkt. No. 70 at 9).[8]  Following that, Chuck Miller, Trelewicz, Gilreath, and Athey, all of whom were present at the MAR meeting, teamed up to generate disciplinary events in order to terminate Lasure.  Id. at 8, 20-21, 33. Lasure, who was not present at the MAR meeting, but heard about it from

_____

[8] Any argument that the other two managers were terminated as part of such a scheme is unsupported by the facts.  Brenda Ferrell voluntarily resigned and James Schaner apparently still works for Sam's Club (Dkt. No. 65-10

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

Martin, admits that Lencke never mentioned getting rid of her due to her age. Rather, she was "given the impression" that she was unable to do the job because of her age (Dkt. No. 48-1 at 17). The bulk of her argument hinges on a few comments made by Chuck Miller more than a year before her termination.

After Chuck Miller placed Lasure on a PIP, he stated during a telephone call that he would imagine, "at your age and with the tenure with the company that you have, that you can take care of yourself should something happen and that you are financially set" (Dkt. No. 48-1 at 16). On another occasion, Chuck Miller made the following comment to Lasure: "Have you just completely given up? Are you just tired of all of this? You know, you've been in this position for a long time. Are you just tired of it?" (Dkt. No. 72-1 at 7). It is undisputed that neither Gilreath, who investigated Lasure and recommended her termination, nor Trelewicz, who initiated Lasure's first coaching, commented on Lasure's age (Dkt. No. 48-1 at 5, 23). When Lasure was asked whether she recalled anyone on the market team making age-related comments, she responded in the negative (Dkt. No. 48-1 at 18).

Chuck Miller's comments bear on Lasure's tenure with Sam's Club, rather than her age. To the extent his comments can be

construed as age-related, they were immaterial to Sam's Club's decision to terminate Lasure's employment. <u>See</u> <u>Merrick v. Farmers Ins. Grp.</u>, 892 F.2d 1434, 1438 (9th Cir. 1990) (distinguishing "stray" remarks about age that were unrelated to the decisional process from comments suggesting that the employer considered impermissible factors). Chuck Miller made his comments over the telephone in a private meeting with Lasure sometime during the summer of 2011, about one year before Lasure's termination. <u>See</u> <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 511-12 (4th Cir. 1994) (finding comment made two years prior to termination irrelevant to issue of age discrimination due to remoteness in time). There is no evidence that Chuck Miller repeated his comments at a later point in time, or that any other decision maker made similar comments. Law in this circuit is clear that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 389, 300 (4th Cir. 2010) (emphasis in original) (quoting <u>Anderson</u>, 477 U.S. at 247-48) (internal quotation marks omitted)). Factual disputes "must be both material and genuine, and district courts

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

must ensure both conditions are satisfied before sending a case to trial." Id.

Although Lasure goes into great detail about her exemplary career at Sam's Club and the alleged scheme that led to her termination, the fact remains that she has failed to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted); see also Biddle v. Fairmont Supply Co., No. 1:14CV122, 2015 WL 5634611, at *4 (N.D.W. Va. Sept. 24, 2015) (Stamp, J.) ("[T]he fact the plaintiff believes she provided satisfactory work, or that her coworkers thought the same, carries little weight. Without more, such a self-assessment by the plaintiff is not enough to show pretext, or frankly, to satisfy any of the other requirements for a discrimination claim under the WVHRA").

When taking the facts in the light most favorable to Lasure, as the Court must, the most she can establish is that Sam's Club terminated her employment after concluding that she had intimidated and retaliated against associates. Lasure's argument to the contrary–essentially, that she was a good, valuable employee, and therefore, her termination must have been based on her age–is unsupported by the evidence and insufficient to survive summary

**MEMORANDUM OPINION AND ORDER GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48]
AND DISMISSING THE CASE WITH PREJUDICE**

judgment.  More is required.  The dearth of evidence that Sam's Club terminated Lasure based on her age leads to the inevitable conclusion that Lasure has failed to "offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact."  <u>Skaggs</u>, 479 S.E.2d at 583.

For the reasons discussed, the Court **GRANTS** Sam's Club's motion for summary judgment (Dkt. No. 48) and **DISMISSES** the case **WITH PREJUDICE**.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record, and to enter a separate judgment order.  It further **DIRECTS** the Clerk to remove this case from the active docket of the Court.

DATED:  December 11, 2015.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE